**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**ELLA SERGEANT**                                                                                              **PLAINTIFF**

**vs.**                                                          **4:09CV00213-WRW**

**LITTLE ROCK SCHOOL DISTRICT,
and BARBARA BARNES, in her individual
and official capacities**                                                                                  **DEFENDANTS**

**ORDER**

Pending is Defendants' Motion for Summary Judgment (Doc. No. 22). Plaintiff has responded,[1] and Defendants have replied.[2]

For the reasons set out below, Defendants' Motion for Summary Judgment is GRANTED IN PART, that is, as to Plaintiff's federal law claims; the remaining claims, asserted under state law, are DISMISSED WITHOUT PREJUDICE.

**I.      SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

---

[1]Doc. No. 34.

[2]Doc. No. 38.

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should be granted only when the movant has established a right to the judgment beyond controversy.[5]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6]  I must view the facts in the light most favorable to the party opposing the motion.[7]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

## II.   BACKGROUND

Defendant Little Rock School District ("LRSD" or "school district") hired Plaintiff Ella Sergeant in September 2007 as a Department of Special Programs Supervisor.[10]  Defendant

---

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

[10]Doc. No. 2.

Barbara Barnes, the Director of Special Programs for the school district, was Plaintiff's immediate supervisor. Plaintiff's job duties included making sure disabled students had access to school programs, activities, and services, as required by the Individuals with Disabilities Education Act,[11] the Americans with Disabilities Act ("ADA"),[12] and the Rehabilitation Act.[13] Her responsibilities also included consulting with special education and regular education personnel and monitoring implementation of the education programs for students with disabilities.[14]

Plaintiff was a temporary employee. The parties' written employment contract expressly provided that Plaintiff's employment would end on June 30, 2008, and that her position would be posted as vacant for the following school year.[15] The contract stated: "The terms and conditions of *temporary employment as contained herein* are fully understood by [both parties]."[16] Nonetheless, Plaintiff alleges that "every level of the chain of command," including Defendant Barnes and school district superintendent Linda Watson, told her that they "did not think there would be a problem"[17] with her getting rehired for the position but, if not, that another position

---

[11]20 U.S.C. §§ 1400, *et seq.*

[12]42 U.S.C. §§ 12101, *et seq.*

[13]29 U.S.C. §§ 701, *et seq.*

[14]Doc. No. 40.

[15]Doc. No. 22-1.

[16]Doc. No. 38-2 (emphasis added).

[17]Doc. No. 36.

would be created for her.[18]  In a letter dated April 30, 2008, however, Superintendent Watson notified Plaintiff that, pursuant her temporary employment contract, her employment would end on June 30, 2008.[19]

Plaintiff applied for several positions with the LRSD, including the one she held until June 30, 2008, but she was not hired.  During the summer of 2008, Plaintiff applied for three positions in the Department of Special Programs: Secondary Supervisor, Elementary Supervisor, and 504 Coordinator.[20]  These positions were filled by a hiring committee, which Plaintiff contends included Defendant Barnes and other staff "who were angry at Plaintiff for insisting that laws be complied with."[21]  On November 26, 2008, Plaintiff filed an EEOC charge alleging that she had been discriminated against because of her association with children with disabilities and in retaliation for opposing discrimination against these children; the charge was dismissed on September 15, 2009.[22]  In 2009 Plaintiff applied for several principal and assistant principal positions with the school district.[23]  Plaintiff alleges that she was not hired for any of the open positions because of her refusal to commit certain illegal acts and because of her association with disabled students.[24]  She contends that people with lesser qualifications, who had not engaged in

---

[18]Doc. No. 35.

[19]Doc. No. 38-3.

[20]Doc. No. 2.

[21]*Id.*

[22] Doc. No. 25.

[23]*Id.*

[24]Doc. No. 35.

activities protected under the ADA, the Arkansas Civil Rights Act,[25] the Rehabilitation Act, and the Arkansas Whistle-Blower Act, were hired.[26]

Plaintiff contends that she was asked to commit illegal acts and that she reported illegal acts, including failure to properly test and evaluate students, failure to keep behavior plans up to date, and failure to follow behavior plans.[27] Plaintiff's Second Amended and Supplemental Complaint[28] alleges that Defendants "terminated/failed to hire/failed to rehire" her in violation of her rights under the Arkansas Whistle-Blower Act, the Arkansas Civil Rights Act, the Rehabilitation Act, the ADA, and 42 U.S.C. § 1983.  Specifically, Plaintiff asserts that (1) in violation of the Arkansas Whistle-Blower Act, Defendant terminated and failed to hire her, as well as interfered with her education and relationship with the University of Arkansas at Little Rock ("UALR"), because she reported violations of the law and refused illegal orders (Count I); (2) in violation of the Rehabilitation Act and the ADA, Defendant LRSD discriminated against her because of her association with persons with disabilities by terminating her and failing to hire her, and by interfering with her education and relationship with UALR (Count II); (3) in violation of the Arkansas Civil Rights Act and the ADA, Defendants terminated Plaintiff, as well as interfered with her education and relationship with UALR, in retaliation for her "filing an EEOC charge, opposing violations of the rights of disabled children, and participating in processes aimed at asserting their rights" (Count III); and (4) Defendants violated her due

---

[25]Ark. Code Ann. §§ 16-123-101, *et seq.*

[26]*Id.*

[27]Doc. No. 25.

[28]Doc. No. 13.

process rights and the Arkansas Civil Rights Acts by terminating her in breach of an implied contract of employment and in violation of the public policy of Arkansas (Count IV).[29]

## III.   DISCUSSION

### A. Termination of Employment

To establish a *prima facie* case of employment discrimination, a plaintiff must show that she suffered some type of adverse employment action. Regarding Plaintiff's termination claims, it is undisputed that, under the express terms of the parties' written employment contract, Plaintiff's employment ended on June 30, 2008. So, any possible finding of "termination" rests on Plaintiff's implied contract theory.[30]

The alleged oral statements by Plaintiff's supervisors, which form the basis of her "implied contract" theory, were to the effect that "it should not be a problem" for Plaintiff to be rehired for that or another position with the school district. Under Arkansas law, "[n]ot every utterance of an employer is binding . . . . To bind the employer, an offer must be definite in form and must be communicated to the offeree."[31] The statements alleged in this case—even if made as Plaintiff alleges—were not definite enough to modify the clear language of the written employment contract. Plaintiff has not provided sufficient evidence from which a jury could reasonably conclude that she was terminated or discharged from her employment with the school

---

[29]*Id*.

[30]It appears that Plaintiff is attempting to argue that there was an oral modification of her written contract. See *Berry v. Cherokee Village Sewer, Inc.*, 85 Ark. App. 357 (2004) (discussing implied contract theory).

[31]*Aon Risk Servs., Inc. v. Meadors*, 100 Ark. App. 272, 281 (2007).

district.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims based on termination.

Plaintiff also seeks relief for termination claims under 42 U.S.C. § 1983, claiming Defendants violated her due process rights.  To maintain a due process claim, Plaintiff must have been deprived of a constitutionally protected property interest in continued employment with the school district.[32]  Arkansas adheres to the employment-at-will doctrine, meaning that an employer or an employee may terminate an employment relationship for any reason—or no reason at all—with a few narrow exceptions.[33]  "[P]ublic employees are entitled to procedural due process when they are fired from positions in which they have a legitimate expectation of continued employment, that is, when the employee's entitlement to the job is sufficiently certain so as to amount to a constitutionally protected property interest."[34]  Plaintiff had no legitimate expectation of employment beyond the end date of her contract and, so, no property interest in continued employment with the school district.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim.

Whether Plaintiff can assert a claim under the Arkansas Civil Rights Act is a state law matter.

---

[32] See *Swipies v. Kofka*, 419 F.3d 709, 717 (8th Cir. 2005).

[33] See *Ball v. Ark. Dep't of Community Punishment*, 340 Ark. 424 (2000).

[34] *Holloway v. Reeves*, 277 F.3d 1035, 1038 (8th Cir. 2002).

**B. Refusal to Hire**

Because Plaintiff's employment with the school district ended by operation of an express written contract, her claims are more properly cast as a failure or refusal to hire. Plaintiff contends that she was denied positions with the school district (1) because of her association with persons with disabilities (discrimination in violation of the ADA and Rehabilitation Act) and (2) in violation of the Arkansas Whistle-Blower Act, based on her reporting violations of the law and her refusal to comply with illegal orders from her supervisors, *i.e.*, retaliation for protected activity under the Individuals with Disabilities Education Act.

Under the ADA,[35] an employer is prohibited from:

> excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.[36]

A *prima facie* case of associational discrimination requires a showing: (1) that the plaintiff was qualified for the job at the time of the adverse employment action; (2) that the plaintiff was subjected to adverse employment action; (3) that the plaintiff was known by his employer at the time to have a *relative or associate* with a disability; and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.[37] Defendants argue that Plaintiff's associational discrimination claim fails because she cannot demonstrate that there was

---

[35]Associational claims may also be made under the Rehabilitation Act. See, *e.g.*, *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Division*, 150 Fed. Appx. 424 (6th Cir. 2005).

[36]42 U.S.C. § 12112(b)(4).

[37]*Trujillo v. Pacificorp*, 524 F.3d 1149, 1154 (10th Cir. 2008).

"something unique about her association that set her apart"[38] from others employees who worked with special education students.

While the disabled person with whom a plaintiff has a "known relationship or association" need not be a family member,[39] the "association" Plaintiff had with disabled students in this case is too attenuated to state a claim under the ADA. The facts here are similar to those in *Freilich v. Upper Chesapeake Health, Inc.*[40] In *Freilich*, the Fourth Circuit Court of Appeals held that the plaintiff, a physician, had not stated a claim under the associational discrimination provision of the ADA because her "generalized references to association with disabled persons or to advocacy for a group of disabled persons are not sufficient to state a claim for associational discrimination under the ADA."[41] In that case, the plaintiff claimed that the defendant hospital discriminated against her and denied her equal treatment because of her association with and advocacy for her dialysis patients, whose rights were being violated. The Court correctly noted that the associational discrimination provision in Title I of the ADA "was intended to protect qualified individuals from adverse job actions based on 'unfounded stereotypes and assumptions' arising from the employees' relationships with particular disabled persons."[42] Here, while Plaintiff does name individual students and alleges that she advocated

---

[38]Doc. No. 25.

[39]29 C.F.R. § 1630.8 ("family, business, social or other relationship or association").

[40]313 F.3d 205 (4th Cir. 2002).

[41]*Id.* at 216 (citing *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23 (1st Cir. 2000) and *Barker v. Int'l Paper Co.*, 993 F.Supp. 10 (D. Me. 1998)).

[42]*Freilich*, 313 F.3d at 215 (citing *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26 (1st Cir. 2000)).

for their rights, she does not allege the kind of relationship or association that is protected under the ADA.[43] Accordingly, Plaintiff cannot make a *prima facie* case of discrimination based on her association with students with disabilities, and summary judgment must be granted on her ADA claim.

Plaintiff's claim under the Arkansas Whistle-Blower Act is a state law cause of action.

### C. Interference with Education and Relationship with UALR

Finally, Plaintiff claims that Defendants violated her rights "by interfering with her education and relationship with UALR."[44] The written employment contract provided that Plaintiff was not certified as a Special Education Supervisor and that an approved "Additional Licensure Plan" was required in order for her to be employed as a Special Education Supervisor.[45] The certification process included taking a class at UALR (which Plaintiff completed) and completion of an internship (which Plaintiff was scheduled to complete in the

---

[43] See *Larimer v. Int'l Bus. Machines Corp.*, 370 F.3d 698, 700 (7th Cir. 2004) (finding the following three types of situations within the intended scope of the association section of the ADA: (1) expense (*e.g.*, spouse has a disability that is costly to the employer because the spouse is covered by the company's health plan); (2a) disability by association (*e.g.*, the employee's homosexual companion is infected with HIV and the employer fears that the employee may also have become infected through sexual contact with the companion); (2b) disability by association (*e.g.*, one of the employee's blood relatives has a disabling ailment that has a genetic component and the employee is likely to develop the disability as well); (3) distraction (*e.g.*, the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that, to perform to his employer's satisfaction, he would need an accommodation, perhaps by being allowed to work shorter hours)).

[44] Doc. No. 13.

[45] Doc. No. 25.

spring of 2009 in the Little Rock School District).[46] According to Plaintiff, she attended the first three sessions but was thereafter told not to come back.[47]

Plaintiff cites no authority for this claim, and interference with education does not appear to be an adverse employment action under the cited statutes. To the extent that Plaintiff has alleged a tort,[29] it is a state law cause of action.[30]

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. No. 22) is GRANTED IN PART and judgment is entered in favor of Defendants on all of Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims (under the Arkansas Whistle-Blower Act, Arkansas Civil Rights Act, and tort) and, accordingly, they are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 12th day of August, 2010.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[46]Doc. No. 13.

[47]*Id.*

[29]See *O'Hayre v. Board of Educ. for Jefferson County Sch. Dist. R-1*, 109 F.Supp.2d 1284, 1297-98 (D. Colo. 2000) (declining to create new tort based on the theory of intentional interference with educational opportunity).

[30]See, *e.g.*, *Hunt v. Riley*, 322 Ark. 453 (1995) (setting out elements of tortious interference with a contract or business expectancy).